## THE SOUTH CAMBRIA.

## ROWLAND v. THE SOUTH CAMBRIA.

*(District Court, D. Delaware.* May 14, 1886.)

1. PILOTAGE—VALIDITY OF STATE LAWS.
    The provisions of a state law, regulating pilots and pilotage, which are in direct and manifest collision with the act of congress of March 2, 1837, concerning pilots, *held,* to be inoperative and void.

2. SAME—CONSTRUCTION OF THE ACT OF CONGRESS OF MARCH 2, 1837.
    A law of the state of Delaware provides that the first duly-licensed pilot who may offer himself to any inward bound vessel in the Delaware bay, requiring a pilot, shall take charge of her, and that if his services are refused he may sue the master, owner, or consignee thereof for full pilotage. The act of congress of March 2, 1837, (5 St. 153,) enacts "that it shall and may be lawful for the master or commander of any vessel coming into or going out of any port situate upon waters which are the boundary between two states, to employ any pilot duly licensed or authorized by the laws of either of the states bounded on the said waters, to pilot said vessel to or from said port, any law, usage, or custom to the contrary notwithstanding." *Held,* that, although the Delaware bay and river do not constitute a boundary between the states of Delaware and Pennsylvania, these states, being coterminous, and bordering on the same navigable waters, come within the spirit and meaning of the act of congress, which was intended to neutralize the effect of adverse and conflicting laws of adjoining states which had exercised, or might assume, an exclusive regulation of pilotage on navigable waters which are the common, though not the separating, boundary of such states. Following *The Clymene,* 9 Fed. Rep. 164; S. C. 12 Fed. Rep. 346; *The Ullock,* 19 Fed. Rep. 211; *The Abercorn,* 26 Fed. Rep. 877.

In Admiralty.

*Flanders & Pugh* and *Levi C. Bird,* for libelant.

*Morton B. Henry* and *Benj. Nields,* for respondent.

WALES, J.  This is a libel for pilotage service.  On the twenty-second of October, 1885, the British steam-ship South Cambria, bound from St. Jago de Cuba to Philadelphia, when about 20 miles W. by N. from Cape Henlopen, signaled for a pilot.  In answer to the signal the libelant, a regularly licensed pilot under the laws of the state of Delaware, and duly authorized to pilot vessels of that class, was put on board the steam-ship, and tendered his services to pilot her to Philadelphia, he being the first pilot to offer himself for that purpose.  The master of the South Cambria refused libelant's offer, under instructions previously given by the agent of the owners not to employ a Delaware pilot, and subsequently, on the same day, accepted the services of E. L. Davis, a duly-licensed pilot under the laws of the state of Pennsylvania, who navigated the vessel to Philadelphia.  The master selected the Pennsylvania pilot in order to avail himself of the lower rate of charges for pilotage, the difference in this instance being $26.06.  The libelant sues for $115.50, the amount he would have been entitled to had his services been accepted and performed, by virtue of sections 5 and 6 of the act of the legis-

lature of Delaware regulating pilots and pilotage in the Delaware bay and river, passed April 5, 1881, (16 Del. Laws, 496,) which provides "that every ship or vessel, propelled by steam or sails, arriving from or bound to any foreign port or place, except such as are solely coal-laden, passing in or out of the Delaware bay by the way of Cape Henlopen, shall be obliged to receive a pilot:  *   *   *   provided she is spoken, or a pilot offers his services outside of the Cape Henlopen light-house, bearing south-west; and if the master of any such ships or vessels, after she is spoken or a pilot offers, shall refuse or neglect to take a pilot, the master, owner, or consignee of such vessel shall forfeit and pay to any such pilot suing for the same a sum equal to the pilotage of such ship or vessel;  *   *   *   that the pilot who shall first offer himself to any inward-bound ships or vessels shall be entitled to take charge thereof."

The respondent justifies the master's refusal of the libelant's services, and the employment of a Pennsylvania pilot, under the act of congress of March 2, 1837, (section 4236, Rev. St.,) which enacts that "the master of any vessel coming into or going out of any port situate upon waters which are the boundary between two states, may employ any pilot duly licensed or authorized by the laws of either of the states bounded on such waters, to pilot the vessel to or from such port." The contention of the respondent is that the pilotage law of Delaware, in so far as it conflicts with this act of congress, is invalid, and that by virtue of the latter the master of the South Cambria had the right to select a pilot from either state bordering on the Delaware bay or river, without reference to priority of offer by any such pilot.

It may be considered as settled that the states have concurrent power with congress to pass pilotage laws until congress shall take exclusive control of the subject by the enactment of a general and uniform law, and, in the meanwhile, that such acts as congress shall make are of paramount authority, and all state laws which are in direct and manifest collision with them must yield.  3 Kent, Comm. 390; *Cooley* v. *Board of Wardens of Philadelphia*, 12 How. 299; *Ex parte McNiel*, 13 Wall. 236. Such, also, it may be inferred from the act of congress of August 7, 1789, § 4, was the understanding of the members of that body, many of whom had taken an active part in framing the constitution of the United States. That section is in these words: "That all pilots in the bays, rivers, inlets, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the states respectively wherein such pilots may be, or with such laws as the states respectively may hereafter enact for the purpose, until further legislative provision shall be made by congress." 1 St. 54. The question is thus raised whether the compulsory clause of the Delaware statute of April 5, 1881, so conflicts with the act of congress of March 2, 1837, as to be nugatory, and to leave the libelant without any right of action.

The question is not entirely new. The waters of the Delaware

bay and river are not, it is true, the boundary *between* the states of Delaware and Pennsylvania; but it has been held that as these states are coterminous, and border on the same waters, they come within the purview of the act of congress which was intended to remedy the very difficulty which has arisen in this case, to-wit, the attempted enforcement of the compulsory feature of a state statute, and the denial of the rights of the master of a vessel to select his pilot from either of two states when navigating the waters which are common to both. The act of congress of 1837 grew out of disputes between the states of New York and New Jersey as to the employment of pilots, the former asserting the right to prescribe that none but pilots licensed by its laws should be employed in navigating vessels bound to its ports. One of the first, cases in which this act came under consideration was *Flanigen* v. *Washington Ins. Co.*, 7 Pa. St. 311, where the supreme court of Pennsylvania recognized the right of the master of a vessel outward bound from Philadelphia to employ a pilot from either of the states of Pennsylvania, New Jersey, or Delaware. The United States district court for the Eastern district of Pennsylvania has given a similar construction to the act, in *The Clymene*, 9 Fed. Rep. 164. In that case a Delaware pilot, licensed under the Delaware law, of April 5, 1881, had piloted a steam-ship from the entrance of Delaware bay to Philadelphia, and payment for his services was refused on the ground that by an act of assembly of Pennsylvania, approved February 4, 1846, it was made an indictable offense for any person to pilot a vessel to Philadelphia without having a license from the board of wardens of that port; hence his contract was illegal. The court, however, decided that whatever may have been the extent of state authority on the subject of pilotage prior to the act of 1837, it could not be exclusive thereafter; that congress did not intend by the act to interfere with the proper exercise of state authority, but to provide against an abusive and hostile exercise of it; that a state could license pilots, and make regulations for their government and employment, but could not exclude others, duly licensed elsewhere, from employment on the public waters of the nation because those waters happened to be within its territorial limits. The precise question was, did the pilot's license authorize him to do what he undertook, notwithstanding the prohibitory law of Pennsylvania? And his claim was sustained on the ground that vessels requiring pilotage might elect whom they would employ. The act of congress, it was said, was intended to apply to just such circumstances, which were clearly within its spirit, and, with a just interpretation of its language, as clearly within its terms. The decree of the district court was affirmed, on appeal, by the circuit court for the same district, which held that the act of 1837 applied to the pilotage laws of coterminous states situated upon the same navigable waters, but which are not the separating boundary between them, such a construction being clearly within the meaning of the act. *The Cly-*

*mene,* 12 Fed. Rep. 346. See, also, *The Alzena,* 14 Fed. Rep. 174.

The same question was before the United States district court for the district of Oregon. An Oregon pilot, whose services had been tendered to and refused by the master of a vessel, inward bound on the Columbia river, sought to recover pilotage fees because he was the first pilot who had offered, and was entitled, under the Oregon law, to full pilotage. The master of the vessel employed a pilot licensed by the law of Washington Territory. It was decided that although the Columbia river is not a boundary between two "states," in the sense in which the word is used in the constitution, it is a boundary between one such state and an organized territory of the United States, and that the case came within the mischief intended to be remedied by the act of congress; and that under this construction the master had the right to take a pilot from either Oregon or Washington, without reference to which made the first offer of his services. *The Ullock,* 19 Fed. Rep. 211. The same court has recently (March 26, 1886) passed on the same question, and reaffirmed its former opinion. *The Abercorn,* 26 Fed. Rep. 877.

The main purpose of the act of 1837 was, undoubtedly, to neutralize the effect of adverse and conflicting laws of adjoining states which had or might assume an exclusive regulation of pilotage on navigable waters which are the common, though not the separating, boundary of such states; and no better plan for avoiding or deciding controversies springing out of such conflicting laws, short of a general and uniform system, could have been devised than the one contemplated by the act, namely, the conferring on the master of any vessel requiring a pilot the right of electing who shall serve him in that capacity. This was the object aimed at. The mischief to be suppressed was apparent, and the remedy is equally so. Such being the meaning of the act, under a fair interpretation of its spirit and terms, and this construction being supported by the adjudications of state and federal courts, I am constrained to order that the libel in this case be dismissed, and that a decree be entered for the respondent for his costs.